UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SERHAT GUMRUKCU, <br><br> Defendant. | Case No. 5:22-cr-58 |

### SERHAT GUMRUKCU'S MOTION TO DISMISS COUNT FOUR

Defendant Serhat Gumrukcu, by and through his attorneys of record, respectfully renews his Motion to Dismiss Count Four of the Third Superseding Indictment ("TSI").  Gumrukcu contends that the TSI fails to state a claim for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.

### MEMORANDUM OF LAW

#### Statement of the Case

On October 6, 2023, Gumrukcu moved to dismiss Count Four of the TSI for failure to state a claim.  ECF 110.[1]  He argued the federal wire and mail fraud statutes criminalize only schemes to deprive people of traditional property interests.  *See Ciminelli v. United States*, 143 S.Ct. 1121, 1123 (2023).  As a result, the Government must prove not only that the wire fraud defendants "engaged in deception," but also the purported victim's money or property was "an object of their fraud." *Kelly v. United States*, 140 S.Ct. 1565, 1571 (2020) ("The wire fraud statute thus prohibits

---

[1] ECF refers to the docket entries generated by the Electronic Court Filing system. We pin-cite to the ECF-generated page numbers atop each filing.

only deceptive schemes to deprive the victim of money or property") (internal quotation, bracket, and citation omitted.) Because the TSI failed to allege that the charged conspiracy targeted Greg Davis's or Greg Gac's "property or money," Gumrukcu argued it was insufficient as a matter of law. Accordingly, Gumrukcu urged for dismissal of Count Four.

On the merits, the Government revealed that it was proceeding under a breach of contract theory pursuant to *Pasquantino v. United States*, 544 U.S. 349 (2005).[2] *See* ECF at 7-8. It also claimed the alleged conspiracy targeted Greg Gac's money and property as well. *See id.*, at 9-10.

Gumrukcu replied that the Government misread *Pasquantino* by confusing established tax debt with a claim for contract damages. *See* 544 U.S. at 352-57; *United States v. Adler*, 186 F.3d 574 (1999) (confirming the important distinction between "claims for money," which present a "chose in action," versus an established entitlement to money).

On January 19, 2024, the district court—the Honorable George Crawford, United States District Judge—held a hearing on the motion. After hearing from the defense, the Court asked the prosecutor to set forth the Government's theory of fraud to be litigated:

> I had trouble understanding your theory of the, of the case. Do you have a kind of—I'm sure you do—a theory as to why these false statements and bad checks and fraudulent bank letters, what they were all supposed to accomplish?

ER 142 at 46:24:47-4. The prosecutor did not say what was necessary: to obtain Greg Davis's money or property.[3]

The prosecutor instead demurred, explaining:

---

[2] The Government also offered the baseless procedural argument that Gumrukcu's motion requires an evaluation of the trial evidence. Not so. *See infra.*, at 8-10; *see also* ECF 120 at 1-3.

[3] The Government did not say it because the indictment alleges no such thing.

> But I think there's multiple things going on and there's multiple motives that different people had in connection with this, and that's why we allege, for example, the, you know, January 2015 event where Davis catches them lying about this First Cyprus Bank. There's a lot of different issues that were happening over time. And so I don't think there is an easy answer to saying why this -- I can tell you that one possible theory is that, you know, both Mr. Eratay and Mr. Gumrukcu were magicians and they actually enjoyed, they enjoyed doing this, this was an illusion that they enjoyed. That may be something we argue to the jury, which may be a permissible argument to the jury. We can decide what I can argue and what I cannot argue.

*Id.*, at 47:16-48:3. A cognizable theory of conspiracy to commit wire fraud this is not.

The Court addressed the motion in a written order the following week. ECF 136. It recognized that "[t]he indictment does not allege that Davis was deceived into paying anything[,]" but didn't directly address whether the alleged conspirators agreed to obtain Davis's money, whether they succeeded or not. Nor did the Court tackle the heart of the issue: it didn't address *Pasquantino* or *Adler* and decide whether the Government may proceed on a theory that "breach of contract" is a property right. It instead left the issue unresolved:

> The issue of whether Davis was a victim of wire fraud remains in the case and is not resolved by this ruling. Count IV is not specific about how the defendants sought to separate Davis from his money or property. When pressed, the prosecution advised that there were more facts than those laid out in the indictment. *The court is content to postpone answering the question of whether a breach of the redemption agreement amounts to a loss of property until the Government has introduced its evidence at trial or, at a minimum, provided a full proffer in response to a motion in limine directed at issues of relevance and admissibility.*

*Id.*, at 8-9 (emphasis added).[4] In other words, the Court denied the motion without prejudice to bringing it anew.

---

[4] In contrast, the Court permitted Count Four to proceed based on by finding it alleges that Gac was the target of the fraud because "Gac advanced his own money to Davis after receiving multiple false statements about Lauran Trading's financial condition." Even putting aside Gumrukcu's disagreement as to the legal import of that allegation, the Government has

3 | P a g e

For the reasons set forth below, Gumrukcu respectfully contends that the Court should address his Rule 12 challenge to the sufficiency of the TSI now, in advance of trial.

## ARGUMENT

**A. The allegations.**

The TSI alleges as Count Four a conspiracy to commit wire fraud. ECF 69 at 9. The Government therein contends that Count Four sets forth sufficient facts that, if believed, would support the charge that Gumrukcu and Berk Eratay "knowingly and willfully conspired to commit wire fraud, in violation of 18 U.S.C. § 1343." ECF 69, ¶ 17. The Government claims that the scheme alleged establishes that Gumrukcu and Mr. Eratay violated section 1349 "by devising and executing a scheme to defraud [Greg Gac] and Gregory Davis by attempting to deceive them about funds available to Gumrukcu and Lauran Trading, about the identity of individuals involved with Gumrukcu and his business activities, and about past and future financial transactions related to Mode Lauran." ECF 69 at 9 (¶ 17).

Gumrukcu, as he must, accepts the indictment's allegations as true for the purposes of this motion. Nothing presented herein, however, should be considered his agreement with those allegations in any respect. Gumrukcu has denied the allegations and entered a not guilty plea. *See* ECF 86. In the TSI, the government details alleged conversations between Gumrukcu, Berk Eratay, Greg Gac, Gregory Davis, and others. Despite multiple pages detailing alleged

---

since walked back its assertion that Gac, not Davis, was the victim targeted by the alleged conspiracy:

> But there is a lot of information about the interactions between the defendant and this middleman, Greg Gac, as well as the victim, Greg Davis.

ECF 183 at 6:14-17. *But see* ECF 112 at 1, 3-10 (arguing Gac was targeted as middleman).

communications and transactions, Count four of the TSI fails to allege the essential elements of the crime charged.

**B. Legal standards.**

The Fifth Amendment requires that an indictment set forth the elements of the offense, charged with sufficient precision to protect against prosecution for crimes based on evidence not presented to the grand jury, and informs the defendant of the charges he must meet with enough detail that he may plead double jeopardy in a future prosecution. *Hamling v. United States,* 418 U.S. 87, 117 (1974).  Accordingly, a motion to dismiss a count in an indictment must be granted where the indictment "fails to allege the essential elements of the crime charged." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000); *see United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (dismissal required where conduct alleged is not prohibited by language of statute); *United States v. Heicklen*, 858 F.Supp 2d 256, 262 (S.D.N.Y. 2012) (where "the facts alleged [in an Indictment] do not constitute an offense as a matter of law," dismissal is appropriate).
In addition, "[t]he Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (citation omitted). Or as the Supreme Court instructed long ago:

> 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' *United States v. Hess*, 124 U.S. 483, 487 (1888).

*Hamling*, 418 U.S. at 117-18 (parallel citations omitted). Congress included this constitutional requirement in the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 7(c)(1).

In considering a motion to dismiss, the court will "examine the indictment as a whole, accept as true the facts alleged, and determine only whether the indictment is valid on its face." *United States v. Elliott*, 363 F. Supp. 2d 439, 450 (N.D.N.Y. 2005).

As for the substantive counts, the law is likewise well established. The essential elements of a wire fraud violation are: (1) "a scheme to defraud"; (2) "money or property as the object of the scheme"; and (3) "use of the wires to further the scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (citation omitted). The Government must prove not only that the wire fraud defendants "engaged in deception," but also the purported victim's money or property was "an object of their fraud." *Ciminelli v. United States*, 143 S.Ct. at 1126 (citing *Kelly*, 140 S.Ct. at 1571; *see also Kelly, id.* ("The wire fraud statute thus prohibits only deceptive schemes to deprive the victim of money or property") (internal quotation, bracket, and citation omitted). "The original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property." *Cleveland v. United States*, 531 U.S. 12, 18-19 (2000) (citing *McNally v. United States*, 483 U.S. 350, 360 (1987)).

In addition, the fraud statutes "require[] the object of the fraud to be "'property' in the victim's hands[.]" *Cleveland*, 531 U.S. at 26. "It does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim." *Id*. at 15.

The Government must also show "that some actual harm or injury was contemplated by the schemer. Because the defendant must intend to harm the fraud's victims, misrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution." *United States v. D'Amato,* 39 F.3d 1249, 1257 (2d Cir. 1994) (quotations, citations, and brackets omitted).

With respect to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, that statute proscribes conspiring to commit a predicate fraud offense and is "subject to the same penalties as those prescribed for the offense." 18 U.S.C. § 1349. "To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; [and] that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy." *United States v. Mahaffy*, 693 F.3d 113, 123 (2d Cir. 2012) (quoting *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999)). Thus, the section 1349 conspiracy requires allegations that Gumrukcu and Eratay agreed, *inter alia*, to target Gac's and/or Davis's money or property through deception. Deceit through the wires does not suffice; the prosecution must allege and prove that the defendants lied to obtain Gac's and Davis's money and property.

**C. Argument.**

The TSI fails to state a claim for section 1349 conspiracy to commit section 1343 wire fraud. The TSI does not allege that Davis had any oil to sell or any money to target, or that either defendant targeted *any* property or money he possessed. And the TSI does not allege that either defendant agreed to target *any* of Greg Gac's, "money or property." Rather, the TSI alleges the opposite: that the money at issue was money Gumrukcu did and would in the future *provide to* Davis and Gac. *See* ECF 69 at 4-9 (¶¶ 2, 5, 6, 7, 8, 9, 11, 12, 14, 15). The TSI alleges that Gumrucku, Eratay and others associated with Lauran Trading provided fraudulent proof of funds letters. But nowhere in the six pages of the TSI detailing the communications and transactions does the government allege that there was an attempt to take any money or property from Mr. Davis or Mr. Gac. Nor does it properly allege that Mr. Davis or Mr. Gac actually had

access to the oil that was the subject to the contracts. As such, the TSI does not meet the requirements of section 1343 or section 1349.

This fatal flaw merits dismissal of Count Four. Like the Government did in *Kelly*, the TSI focuses on allegations of deceit; but to prosecute an alleged violation of sections 1343 and 1349, "the deceit must also have had the 'object' of obtaining [the victim's] money or property." *Kelly*, 140 S.Ct. at 1572. This necessary element, however, is nowhere pleaded in TSI, likely because at no point did Gumrukcu target Davis's or Gac's money or property.

The TSI makes much of the alleged fraudulent communications allegedly sent by Gumrukcu or Eratay. The allegations in the TSI set forth contract claims, not evidence of criminal wrongdoing. The government's attempt to criminalize this conduct is at the heart of the Supreme Court's concern in *Ciminelli* and *Kelly*: making "a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law—in flat contradiction with our caution that, '[a]bsent [a] clear statement by Congress,' courts should 'not read the mail [and wire] fraud statute[s] to place under federal superintendence a vast array of conduct traditionally policed by the States.'" *Ciminelli*, 143 S.Ct. at 1128 (citing *Cleveland v. United States*, 531 U.S. at 27).

1. **The Government's prior response to Gumrukcu's motion lacked merit.**

    a. **Gumrukcu's motion accepts the indictment's allegations as true; but those facts do not support the alleged crime of conspiracy to commit wire fraud because it fails to allege that the alleged conspirators targeted Davis's or Gac's "money or property" within the meaning of 18 U.S.C. § 1349.**

In its Opposition, the Government first argued that Gumrukcu's motion seeks an evaluation of the trial evidence, and as such his motion is barred by Fed. R. Crim. P. 12. ECF 112 at 1-3. In so arguing, the Government miscast his motion, which most certainly can "be resolved without assessing the trial evidence." Indeed, like this one, defendant's initial motion

expressly "accept[ed] the indictment's allegations as true for the purposes of" his motion.  ECF 110 at 2.

Gumrukcu instead contended—and still contends—that the factual averments presented by the grand jury fail to allege that he conspired to target Greg Davis's or Greg Gac's "money or property" within the ambit of section 1349.  *See* ECF 110 at 2-3; *see also id.*, citing *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (dismissal required where the indictment "fails to allege the essential elements of the crime charged"); *see United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) (dismissal required where conduct alleged is not prohibited by language of statute); *United States v. Heicklen*, 858 F.Supp 2d 256, 262 (S.D.N.Y. 2012) (where "the facts alleged [in an Indictment] do not constitute an offense as a matter of law," dismissal is appropriate).

The Government's opposition failed to address any of these cases.  It instead relied on a series of cases that do not inform the issue.

It first trotted out *Costello v. United States*, 350 U.S. 359 (1956), which held that a "defendant be required to stand trial and a conviction be sustained where only hearsay evidence was presented to the grand jury which indicted him[.]" 350 U.S. at 359.  But that's not Gumrukcu's claim, and Gumrukcu's motion raises no evidentiary objections.

The Government next relied on the equally inapposite, *Kaley v. United States*, 571 U.S.320 (2014).  *Kaley* addressed "whether criminal defendants are constitutionally entitled at [a 21 U.S.C. 853(e)] hearing [on pre-trial seizures of forfeitable assets] to contest a grand jury's prior determination of probable cause to believe they committed the crimes charged." 571 U.S. at 32.  The Court held "that they have no right to relitigate that finding." *Id*.  *Kaley* thus does not inform the issue presented by defendants at all.

The prosecution continued with cases addressing the sufficiency of the evidence under Fed. R. Crim. P. 29.  *See* ECF 112 at 2 (citing *United States v. White*, 7 F.4th 90 (2d Cir. 2021) and *United States v. Puzzo*, 928 F.2d 1356 (2d. Cir. 1991)).  But Gumrukcu made no such challenge, and certainly didn't present evidence for the Court to assess.

After arguing these non-issues, the Government offered the bold claim that "[t]he Second Circuit has squarely held that Fed. R. Crim. P. 12 does not allow the sort of review sought by the defendants."  ECF 112 at 2.  But rather than address *Pirro*, *Aleynikov*, *Heicklen*, or *any* of the other Second Circuit authorities relied upon by Gumrukcu—*viz.*, the Second Circuit authority squarely supporting Gumrukcu's motion—the Government cited *United States v. Sampson*, 898 F.3d 270 (2d Cir. 2018) and *United States v. Pope*, 613 F.3d 1255 (10th Cir. 2010) for the uncontroversial proposition that the Court may not resolve evidentiary disputes pre-trial.  *See* ECF 112 at 2-3.  But that wasn't then and isn't now Gumrukcu's motion.

Tellingly, nowhere in its argument did the United States identify *what* facts Gumrukcu purportedly asked the Court to find or reject.  And for good reason, this first counter argument has no basis: Gumrukcu instead asks this Court to accept the indictment's allegations, and upon doing so, to recognize that the grand jury's factual averments fail to state a section 1349 conspiracy because it omits any allegation that the alleged co-conspirators sought Davis's or Gac's money or property within the meaning of section 1349.

  **b. The Government's opposition confessed that it bases Count Four on a breach of contract theory; those allegations do not state a section 1349 offense.**

In its second argument, the Government argued for the sufficiency of the indictment based on a breach of contract theory: "the defendants' scheme sought to deprive Gregory Davis of money he was owed under the Redemption Agreement," which was executed in November

2015.  ECF 112 at 5 (citing TSI ¶ 9).[5]  The Government then confirmed its breach of contract theory as follows:

> Gumrukcu and G.G. recognized Davis's financial interest in Mode Lauran and, after the problems getting Mode Lauran off the ground, Gumrukcu agreed to buy out Davis's interest. The buyout of Davis's property interest in Mode Lauran was agreed to in the Redemption Agreement.  *Id.* ¶ 9.  A principal object of the charged scheme was avoiding paying that debt to Davis. In that contract, Gumrukcu's company, Lauran Trading, agreed to pay money to Mode in consideration for the lost business opportunities in 2015.[6] The indictment identifies the Redemption Agreement[7] but does not describe all its terms. Count Four, however, makes clear that the Redemption Agreement addressed two issues: the buyout of Mode's interest in the Joint Venture, creating a debt to Mode and Davis, and plans for additional oil trading financed by Lauran Trading. *Id.* But after November 2015, Lauran Trading owed Davis at least $950,000. *Id.* Count Four thus makes clear that the defendants deceived G.G. and Davis to avoid paying Davis money that he was owed.

ECF 112 at 7.

But monies owed under an alleged breach of contract do *not* sound in fraud.  The Government thus errs in its reliance on *Pasquantino v. United States*, 544 U.S. 349 (2005), because it confuses established tax debt with a claim for contract damages.  "The question

---

[5] The Government next argued that Gac "was deprived of monies he paid Davis and others[,]" ECF 112 at 5, 9-10.  We address that argument in the next section.  Suffice it to say for now, the Count Four doesn't allege that Gumrukcu and Mr. Eratay "agreed" to target Gac or his money or his property, which is fatal to its sufficiency. *See also supra.*, at 3, n.4.

[6] While unnecessary to the Court's resolution of the issue, it should understand the Gumrukcu was not, and is not alleged to be, a signator of the so-called Redemption Agreement. Accordingly, the Government alleges that "Gumrukcu's company, Lauran Trading, agreed to pay money to Mode in consideration of lost business opportunities[,]" ECF 112 at 7, as opposed to alleging that Gumrukcu so agreed.

[7] The so-called Redemption Agreement is titled a "Summary of Terms" for "Redemption of Mode Interests, Commencement of Mode Management Agreement." We refer to it as either the Term Sheet or the so-called Redemption Agreement.

presented in th[at] case [was] whether a plot to defraud a foreign government of tax revenue violates the federal wire fraud statute, 18 U.S.C. § 1343 (2000 ed., Supp. II)." 544 U.S. at 352-53.  The Court addressed the common law revenue rule that "barred courts from enforcing the tax laws of foreign sovereigns[,]" and held that the scheme alleged by the Government not contravene the common law rule.  *Id.*

On its way to its decision, the Court emphasized that Canada's entitlement to tax payments arose when the defendants imported liquor into Canada but failed to pay the required excise taxes.  *Id.*, at 353-54.  Critical to the Court's decision was Canada's established and uncontested legal right to the tax revenue upon importation.  *Id.*  Or as the Court succinctly explained the property element: "the Government alleged and proved that petitioners' scheme aimed at depriving Canada of money to which it was ***entitled by law***."  *Id.*, at 357 (emphasis added).

More simply, the Court held that "the right to uncollected taxes is an 'entitlement *to collect* money ..., the possession of which is "something of value."'"  *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 30 (Breyer, J., joined by Stevens and Kennedy, JJ., dissenting) (quoting *Pasquantino*, 554 U.S. at 355 (quoting *McNally v. United States,* 483 U.S. 350, 358, (1987)) (parallel citations omitted).  But Davis had no entitlement to collect money, and the indictment does not allege otherwise.

Whatever the merits of Davis's purported claim for breach of contract—and there is none—the indictment does not (because it cannot) allege that Davis was "entitled by law" to any money from Lauran Trading.  Rather, his claim for monies owed remains today unadjudicated, and the indictment fails to allege that the defendants sought to take money or property that Davis actually possessed.  *Cleveland v. United States*, 531 U.S. 12, 15 (2000) ("It does not suffice, we

clarify, that the object of the fraud may become property in the recipient's hands; for the purposes of the mail fraud statute, the thing obtained *must be property in the hands of the victim.*") (emphasis added); *see also Pasquantino*, 544 U.S. at 355 (quoting same).  In sum, the indictment fails to allege that the alleged conspiracy conspired to take Davis's property or money; it only alleges that Davis had a claim for breach of contract that he never pursued, and which defendants didn't target in the scheme alleged.

The Fourth Circuit's decision in *United States v. Adler*, 186 F.3d 574 (1999), confirms this important distinction between "claims for money," which present a "chose in action" versus an entitlement to money, which is a different property right.  The case concerned Adler, who through his company Adler Industries, contracted with House of Blues to produce merchandise, and then contracted with Printgear to obtain the blank shirts Adler would use to fulfill the House of Blues order.  *Id.*, at 575.  Adler claimed that House of Blues breached the parties' contract, and House of Blues settled that claim for more than $800,000.  *Id*.  It was uncontested that Adler continued to owe Printgear nearly $500,000 under their subcontract.  *Id.*[8]  But Adler didn't pay it, and instead, "sent Printgear by facsimile an intentionally false list of payments from the settlement.  Among other things, the list did not disclose the payments to Adler and Kennedy." *Id.*  Printgear subsequently obtained a default judgment against both men.  *Id.*[9]

The Government then charged Adler with wire fraud based on Adler's deceptions about the House of Blues settlement monies, and the jury convicted.  But the District Court entered a judgment of acquittal, and the Fourth Circuit rejected the Government's appeal and affirmed.

---

[8] Here, of course, Gumrukcu contests that Lauran Trading owed money to Davis or Gac.

[9] *Adler* had also absconded to Costa Rica after taking as a "bonus" half of the funds in his company, with his business partner Kennedy taking the other half.  *Id.*

Like here, the Court recognized that "there are only two kinds of property of which Printgear could have been deprived—its chose in action on Adler Industries' debt or the particular money itself that Adler Industries received from the House of Blues settlement."[10] *Id*. at 576.

As for its "chose in action"—the breach of contract claim—Printgear had a property interest. But the indictment there did not allege, and the facts did not support, a finding that the defendant deprived Printgear of his chose in action. *Id*. at 576. Indeed, Printgear ultimately sued and won.

The same is true here. While Davis (and perhaps Gac) claimed to have a chose in action to sue Lauran Trading for breach of contract, the indictment does not allege—nor could it properly—that the defendants did anything to deprive either Davis or Gac of that claimed right, or that the defendants sought to deprive them of a right to sue. In short, they perhaps could have sued, but didn't. *Adler* makes plain that a claim for breach of contract is not a cognizable property interest unless the object of the scheme is to deprive the contracting party of that right. The indictment makes no such allegations.

The Government instead claims that Davis's chose in action itself establishes a <u>right</u> to money, which it most certainly does not. Davis could not collect on his so-called debt. Davis could not have "assigned, traded, bought, and otherwise disposed of" Lauran Trading's alleged debt to him; rather, he only could have assigned or traded or sold his chose in action. *See United*

---

[10] Because the indictment does not allege that Davis had a claim to any particular money in Lauran Trading's possession, we will not address the Court's treatment of such a claim in *Adler*. Suffice it to say, the Court *in Adler* rejected the Government's arguments because like Davis, the only property right Printgear ever possessed was a chose in action against Adler, and the scheme did not deprive Printgear of its ability to sue. The same is true of the scheme alleged in the indictment.

*States v. Mancuso*, 42 F.3d 836, 845 (4th Cir. 1994) (property is anything in which one has a "right that could be assigned, traded, bought, *and* otherwise disposed of.") (emphasis added). But that is not the scheme alleged. In sum, *Adler* establishes the right to seek recompense through the Courts by pursuing a chose in action does not establish a right to money or property other than the chose in action. *See also United States v. Handakas,* 286 F.3d 92 (2d Cir.2002), *overruled on other grounds by United States v. Rybicki,* 354 F.3d 124 (2d Cir.2003) ("Even someone fully familiar with §§ 1341 and 1346, and our cases, would lack any comprehensible notice that federal law has criminalized breaches of contract.").

The indictment does not allege that defendants tried to deprive Davis or Gac or that limited right. Accordingly, the indictment fails to allege a cognizable claim of conspiracy to commit wire fraud, and the Court should dismiss it.

    **c. The Government's allegations regarding Greg Gac's conduct do not save Count Four from its deficiencies.**

Last, to the extent the Government makes another volte-face and tries to save Count Four by repeating its claim that Greg Gac decided, on his own, to pay "Davis $30,000 in the first half of 2015 without receiving any repayment from Gumrukcu until later in 2015[,]" ECF 112 at 9, Gumrukcu will anticipate it.

Simply put, this allegation cannot rescue Count Four. The Government's phrasing alone gives it away when it argues "[t]he indictment outlines how the scheme deprived G.G. of his own money." *Id*.; *see also id.*, at 10 (Claiming that "G.G. lost money based on defendant's fraud scheme." But that's not the question because this is not a civil case addressing reasonably foreseeable damages.

Rather, the question at bar is: where does the indictment allege that the allege conspirators *agreed*, as part of their scheme, to target Gac's money? The answer is nowhere.

This proves fatal to this theory to resurrect Count Four. *See United States v. Mahaffy*, 693 F.3d 113,123 (2d Cir. 2012).

> What distinguishes the offense of conspiracy from a substantive offense, is that "agreement is the essential evil at which the crime of conspiracy is directed." *Iannelli v. United States,* 420 U.S. 770, 777 n. 10 (1975). The agreement itself "remains the essential element of the crime." *Id.* Thus the government must prove the existence of an *agreement* to achieve an unlawful objective and the defendant's *knowing* participation in that agreement. *United States v. Adkinson,* 158 F.3d 1147, 1155 (11th Cir.1998).

*United States v. Chandler*, 388 F.3d 796, 806 (11th Cir. 2004) (parallel citation and footnote omitted). *See also Kelly v. United States*, 140 S.Ct. 1565, 1572 ("the deceit must also have had the 'object' of obtaining [the victim's] money or property."); *United States v. Lew,* 875 F.2d 219, 221 (9th Cir.1989), (for mail fraud, "the intent must be to obtain money or property from the one who is deceived.").

In sum, the indictment does *not* allege that the scheme targeted Gac's money; it instead claims that Gac - who is not alleged to be one of the conspirators - volunteered to provide money to Davis, and then received repayment later. Those facts do not support the legal claim that Gumrukcu and Berk Eratay agreed to obtain Gac's money.

## CONCLUSION

This motion is important. While the Government may be permitted to argue that the conspirators sought to murder Davis to stop him reporting their conduct to the authorities, it should not be permitted to vouch for Davis's errant claims of fraud. Allowing this count to proceed to trial is highly prejudicial to the defense. Whether Davis even had a breach of contract claim is in dispute; allowing it to be called fraud, when it is not as a matter of law, will allow the Government to vouch for its victim, and unfairly and improperly so. A breach of contract is not fraud, and the Government's indictment falls short. Worse, it disregards the Supreme Court's

17 | P a g e

recent and consistent admonishments that federal prosecutors must stop trying to stretch the federal fraud statutes to address all manner of purported misconduct. *See Kelly*, 140 S.Ct. at 1572-72; *Cimenelli*, 143 S.Ct. 1121, 1126-27 (2023); *see also Cleveland*, 531 U.S. at 27.

So too, to permit a trial on a deficient indictment threatens the fairness of the trial with respect to the murder allegations based on prejudicial spillover. *See United States v. Hamilton*, 334 F.3d 170 (2d. Cir. 2003). No party should want to try this case twice, and application of settled law demonstrates the insufficiency of Count Four. The Third Superseding Indictment fails to state a claim for conspiracy to commit wire fraud, and the Court should dismiss it.

Dated this 16th day of July 2024.

Respectfully submitted,

*/s/ Susan K. Marcus*
SUSAN K. MARCUS
Law Firm of Susan K Marcus LLC
29 Broadway, Suite 1412
New York, NY 10006
(212) 792-5131
susan@skmarcuslaw.com

*/s/ Ethan A. Balogh*
ETHAN A. BALOGH
Balogh & Co., APC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 391-0441
eab@balcolaw.com

*/s/ Lisa B. Shelkrot*
Lisa B. Shelkrot
Langrock Sperry & Wool
PO Box 721
Burlington, VT 05402-0721
(802) 864-0217
lshelkrot@langrock.com

Attorneys for Defendant
SERHAT GUMRUKCU