UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SERHAT GUMRUKCU, <br><br> Defendant. | Case No. 5:22-cr-58 |

**SERHAT GUMRUKCU'S RESPONSE TO GOVERNMENT MOTION
IN LIMINE TO ADMIT FED. R. EVID. 404(B) EVIDENCE**

Defendant Serhat Gumrukcu, by and through his attorneys of record, hereby responds to the Government's motion in limine to permit the admission of evidence pursuant to Fed. R. Evid. 404(b).  As set forth below, the Government's motion amounts to a bold claim that the Rules of Evidence don't matter because the Government gets to tell its story as it chooses.  But review of the applicable rules and cases interpreting them permit no such thing.  Upon close scrutiny, the Court should either exclude the Government's Rule 404(b) evidence outright pursuant to the rule;[1] in the alternative, the Court should exclude the proffered evidence pursuant to Fed. R. Evid. 403 based on unfair prejudice, confusion of issues, and to avoid wasting valuable jury time.

---

[1] Gumrukcu also maintains his challenges based on the insufficiency of the Government's pretrial disclosure of proffered Rule 404(b) evidence.  *See* Docket No. ("Dkt.") 185.  In addition, because Gumrukcu there set forth the law governing Rule 404(b) evidence, he will not belabor those issues anew and will instead offer more targeted responses to the Government's contentions.

## MEMORANDUM OF LAW

The Government's motion generalizes the evidence it seeks to introduce, makes sweeping statements and broad assumptions, and does not meet its burden to establish the admissibility of the "evidence" it proffers. Gumrukcu will do his best to identify and address the Government's proffered evidence despite their lack of clarity in their motion. Indeed, the substance of the Government's application fails out of the gate by failing to set forth clearly the bases for the admission of its proffered evidence. *See United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984) ("The government, however, must explain in detail the purposes for which the evidence is sought to be admitted").[2]

The Government's stated reasoning for introducing much of the 404(b) evidence against Gumrukcu is that Eratay at times performed duties as an assistant. And because Gumrukcu asked Eratay to do some things for him, the Government's faulty logic goes, it makes it more likely that he conspired with Eratay and others to murder Gregg Davis. Worse, the Government then offers a broader bid to introduce propensity evidence by arguing that (1) Eratay will testify that he committed other non-violent criminal conduct with Eratay, so (2) that proves it more likely that Gumrukcu organized a murder with Eratay. This logic tramples on Rule 404 which forbids the use of other act evidence to demonstrate propensity. *See United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) ("'Other act' evidence serves a proper purpose so long as it is not

---

[2] *See* 2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 404.23[5][b], at 404-171 (Mark S. Brodin & Joseph M. McLaughlin eds., 2d ed. 2021) ("Once the question of admissibility has been raised, the party offering the evidence has the burden of convincing the court that it is relevant to a consequential fact in issue other than propensity, and that Rule 403 does not require exclusion."); *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014) (en banc) ("[T]o overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way.").

offered to show the defendant's propensity to commit the offense."); *Gomez*, 763 F.3d at 856 ("[T]he Rule allows the use of other-act evidence *only when its admission is supported by some propensity-free chain of reasoning*.") (emphasis added); *see also United States v. Caldwell*, 760 F.3d 267, 281 (3d Cir. 2014) ("In proffering [prior act] evidence, the government must explain how [the evidence] fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference. We require that this chain be articulated with careful precision because, even when a non-propensity purpose is 'at issue' in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way.") (internal marks and citation omitted); *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994) ("[W]hen evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged."); *see also* Dkt. 186 at 7 (Government conceding that Rule 404(b) proscribes introducing propensity evidence, citing and quoting *Levy*, 731 F.2d at 1002,[3] and citing, *inter alia*, *Curley*.).

---

[3] *Levy* presents an interesting choice by the Government. In *Levy*, the defendant was tried for engaging in a sale of heroin, with a man named Elimalich. *Id*. at 1001. The district court then granted the Government's request to introduce evidence of the defendant's participation in a different transaction involving Elimalich *and* the same purchaser as charged in the criminal case. *Id*. at 1001-02. There, the Government—like here—first argued that the proffered evidence was not 404(b) and instead was "inextricably intertwined" with the charged distribution count. *Id*. at 1002. The Second Circuit rejected that contention, and then set forth the limits of that exception to Rule 404 evidence:

> To allow the admission of evidence of crimes or acts unrelated to the charged offense presents the precise threat of prejudice that Rule 404(b) was designed to eliminate.

*Id.*, at 1004. The Court then found non-harmless error arising from the introduction of Rule 404(b) evidence with neither a specific Rule 404(b) reason tendered by the United States, an assessment of proper relevance versus propensity by the district court, nor a proper Rule 403 balancing based on that showing, and it reversed the convictions. The Government invites the

From their motion:

> Eratay's role as the defendant's operative for the Davis murder plot was part and parcel of Eratay's work as the defendant's assistant. Eratay's work on other projects for the defendant, all of which are corroborated by other witnesses and/or documents, is highly probative of not only Eratay's credibility but also the fact that the defendant knew about and directed the murder. Eratay was not merely an assistant who helped with the defendant's schedule and computer needs, but rather was a trusted operative, trusted enough to help with the defendant's criminal or dishonest activity.

Dkt. 186 at 10-11.

To begin, the Government's statement that Eratay's work on other projects for the defendant, "all of which are corroborated by other witnesses and/or documents," is simply untrue. While the fact that some of these projects may have been requested or worked on, it is decidedly untrue that there is corroboration that all of this work was "criminal or dishonest." It is the Government and/or Eratay mischaracterizing that this work was "criminal or dishonest." As reflected in the three recently-disclosed interview memoranda, Eratay makes wild claims and bold assumptions, and the Government's reports provide little to no foundation as to the source of Eratay's claimed knowledge. The Supreme Court has warned against allowing the Government to introduce a "litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Gumrukcu will do his best to address each proffer individually.

Before getting there, we address the substance of the Government's Eratay presentation: its contention that none of this is "other act" evidence at all, and instead is "inextricably

---

same error in its presentation of *all* of the Eratay evidence in Categories 1-7, and the Court should deny the Government's motion on *Levy*. *See also id.*, at 1005 (citing *United States v. O'Connor,* 580 F.2d 38 (2d Cir.1978)); *see also infra.*

intertwined" with the charged crimes. *See* Dkt. 186 at 8. Respectfully, the Government's drive-by citations and quotes are bereft of factual analysis only mask the actual standards.[4]

We'll begin with *Levy*, which the Government relies on. *See supra.*, n.3. There, the Court identified the narrow confines of the "inextricably intertwined" exception to Rule 404:

> We are not confronted with a separate criminal offense occurring during the very commission of the charged offense, as might arise if a defendant assaulted a bank customer in the course of committing a bank robbery. Acts occurring during the commission of a charged offense and related to it may well be so inextricably related to the charged offense that they cannot realistically be considered "other" acts within the meaning of Rule 404(b).[5] But it is not inconceivable that acts or crimes that occur almost

---

[4] For example, it suggests *United States v. Fabian*, 312 F.3d 550, 557 (2d Cir. 2002) permits "relationship evidence" despite the Rule 404 bar on propensity evidence. *See* Dkt. 186 at 9. But *Fabian* didn't address any challenge under a Rule 404 challenge. *See also id.*, at 8 (suggesting that *Unites States v. Coonan*, 938 F. 2d 1553, 1561 (2d Cir. 1991) addresses the admission of other act evidence; it doesn't; *see also* Dkt. 186 at 17 (truncating a quotation of *United States v. Figueroa*, 618 F.2d 034, 943 (2d Cri. 1980) by *United States v. Quattrone*, 441 F.3d 163, 186 (2d. Cir. 2006) to misleadingly suggest the Rule 403's unfair prejudice prong is limited to emotional evidence when both cases reflect a far broader reach of Rule 403). Indeed, the Government's brief is short on discussion and long on cherry-picked string cites that don't provide the full picture. *See e.g.*, Dkt. 186 at 9 (citing *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996), but failing to note that so-called "relationship evidence" still must be assessed pursuant to Rule 404(b), and even if relevant under that standard, must satisfy the concerns presented in Rule 403.)

And while Gumrukcu agrees, of course, that direct evidence of the charged crimes does not qualify as other act evidence, the so-called "relationship evidence" proffered by the United States is mostly unrelated and not contemporaneous with the charges. The Government fails to sustain its burden to show it as direct evidence. *See United States v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003) (other act evidence proved charged criminal enterprise); *United States v. Conception*, 983 F.2d 369, 302 (other act evidence reflected conduct in furtherance of charged conspiracy); *see also infra.*

[5] *Viz.*, to even qualify for this exception, the alleged acts must occur "during the commission of the charged offense[s]." Neary all of Eratay's proffered "relationship" testimony, *see infra.*, necessarily fail this rule. Because the Government failed to provide any *bona fide* Rule 404(b) purpose, *and* the reasoning demonstrating its application here, the Court should deny its motion to admit. To the extent the Government floated a trial balloon and later seeks a do-over, the Court should reject such application as waived by its litigation choices in bringing its motion on the grounds presented.

> contemporaneously with the indicted crime may be entirely unrelated to that crime.[6] To allow the admission of evidence of crimes or acts unrelated to the charged offense presents the precise threat of prejudice that Rule 404(b) was designed to eliminate.[7] And the same risk of prejudice might arise from the admission of evidence of crimes or acts related to the charged offense but, as in this case, occurring at different times, different places and with different people. The defendant would necessarily have to defend against crimes or acts not named in the indictment or not arising from the same transactions giving rise to the crimes named in the indictment. The jury might base its decision, not on the defendant's guilt of the charged crime, but on the defendant's tendency to commit crime. Because the danger of misuse or misapplication of evidence of acts related to the charged crime might be as great as that of unrelated crimes or acts, evaluation of the evidence's admissibility under Rule 404(b) is necessary to minimize prejudice to the defendant.

*Levy*, 731 F.2d at 1003-04; *see also United States v. Carboni*, 204 F.3d 39, 44 (2d Cir 2000) (evidence of illicit conduct, contemporaneous with and related to the charged crime supported finding that evidence was "inextricably intertwined" with the allegations); *United States v. Gonzalez*, 110 F.3d 936, 941-42 (same); *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (so called "inextricably intertwined" other act evidence still subject to exclusion when its relevance is as propensity evidence).

In contrast, the Second Circuit has found no abuse of discretion in admitting Rule 404(b) evidence when the "other act" evidence showed defendants' knowledge and intent of the charged crime. *United States v. Dupree*, 870 F.3d 62, 76 (2d. Cir. 2017). But the Government does not

---

[6] *Viz.*, contemporaneousness is a necessary but insufficient condition to qualify for admission pursuant to Rule 404(b) (and before any Rule 403 analysis). The acts must be "related" to the charged crimes.

[7] *Viz.*, acts "unrelated" to the charged crimes always qualify as Rule 404(b) evidence and must be evaluated as such.

even attempt to sustain that burden, and instead stands on its incorrect claim that its so-called relationship evidence does not implicate Rule 404.

As set forth in the margin and shall be addressed below, the Government's so-called "relationship evidence" is nearly entirely comprised of a series of "other acts" that are unrelated to the crimes charged. As a result, they are necessarily subject to Rule 404, and the Government declined to argue why or how this evidence is admissible under the governing standards. The Court should thus deny the Government's motion on this basis alone.

Helpfully, the Second Circuit has recently spoken on the subject in *United States v. Zhong*, 26 F.4th 536, 551 (2d. Cir. 2022). There, the Court reminded:

> A district court may not freely admit evidence of conduct simply because it relates to the charged crimes or the government offers it for a purpose other than to demonstrate the defendant's propensity to commit the alleged conduct. The inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence that is offered to prove propensity, or otherwise to allow propensity evidence in sheep's clothing.

*Id*. (internal quotations, bracket, and citation omitted). It then addressed the Government's bases for admitting the other act conduct of violence "both to 'complete the story'" and for 404(b) purposes, before holding "[t]he pre-indictment evidence of violence and threats [in a forced labor case] was not admissible under either of these theories." *Id*. at 552.

As the Court explained: "If 'necessary,' the government may introduce evidence of uncharged criminal conduct 'to complete the story of the crime on trial,' but not to tell a new one." *Id*. quoting *United States v. Robinson*, 702 F.3d 22, 37 (2d. Cir. 2012). This proscribed purpose is made all the clearer by its most recent filing on the issue. *See* Government's Response to Defendant's Motion in Limine to Exclude Evidence (Lodged Under Seal) (hereafter,

"Sealed Response").[8]  The Government's evidence failed to meet this standard, the Court found error in the substantive ruling *and* Rule 403 before vacating the convictions and remanding for new trial based on these and other errors.

And just this month, in denying, in part, the Government's motion to present Rule 404(b) evidence, the Honorable Margo K. Brodie, United States District Judge, emphasized that "just because a defendant contests an issue, such as knowledge or intent, it 'does not open the door for the government and give it *carte balance* to introduce any prior act of defendant that fall into the same category." *United States v. Konstantinovskiy*, Case No. 19 Cr. 408 MKB (E.D.N.Y. Jul. 10, 2024), Dkt. 333 at 3 quoting *United States v. Edwards*, 342 F.3d 168, 177 (2d. Cir. 2003) (hereafter, "Konstantinovskiy Order").  "Rather, some similarity or tangible connection between the acts must be identified, something that makes the prior act relevant to proving the contested fact."  *Id*. quoting *Edwards*, 342 F.3d at 177.  And importantly, to assess these issues, "courts engage in a fact-intensive inquiry into the relevance of the prior act to the disputed fact." Konstantinovskiy Order at 4.  Here, the Government continues to shield the relevant facts it will proffer, *see also* Sealed Response, which only serves to frustrate the Court's ability to assess its presentation while shielding from Gumrukcu the evidence it will present.

As shall be shown, the Government's proffered evidence does not complete the story of the alleged fraud of Davis, followed by his murder.  Rather, the Government seeks to tell a host of new stories, not charged, not related to the charges in this case, and holding no relevance—

---

[8] Gumrukcu objects to the sealing of the entirety of its motion.  He contends that complete sealing is not narrowly tailored to serve its needs, and that redaction or the use of pseudonyms suffices to meet that need and thus serve the public trial right.  Notably, the Government sought the defense position but then omitted it from its Friday afternoon submission.

must less a necessary predicate—to the trial of this case. *Zhong* and *Robinson* teach that should not be permitted.

In addition, Gumrukcu presents the following to address the Government's proffer more granularly.

### 1. The allegation the Gumrukcu fled Turkey to avoid criminal charges is irrelevant, incorrect, and should be excluded under Rule 404(b) and Rule 403.

The Government first claims that Gumrukcu emigrated "to the United States in 2013 after absconding from criminal charges in Turkey for fraud in connection with his healing practice." Dkt. 186 at 10. Even if true, which they are not, these allegations do not make it more likely that Gumrukcu participated in Eratay's conspiracy to kill Gregg Davis and are thus irrelevant and should be excluded on that basis alone. *See* Fed. R. Evid. 401. Nor did those alleged events provide any motive for Davis's murder; Davis did not have any information about the alleged criminal case in Turkey, and thus those events could not have provided a basis to pursue Davis's death. For this reason, the proffered evidence of an alleged Turkish fraud case should be excluded pursuant to Rule 404(b).

Nor can the Government credibly contend that the evidence of the alleged Turkish case addressing Gumrukcu's medical practice is "inextricably intertwined" with the allegations in this case, much less "necessary" to complete the story. *See Carboni*, 204 F.3d at 44. Gumrukcu's alleged motivation to emigrate to the United States years before the crime does not relate in any way with the charges at bar. Put another way, this evidence is neither contemporaneous with nor related to charged crimes, as required. *See Levy*, 731 F.2d at 1003-04; *Carboni*, 204 F.3d at 44; *Gonzalez*, 110 F.3d at 941-42. Most plainly, nothing about this proffered evidence supports the factual inference that Gumrukcu committed murder *or* financial fraud against Gregg Davis.

Rather, this alleged evidence, which is factually incorrect in any event, constitutes character evidence, plain and simple.

The Government's brief ultimately confesses their intention to distort the facts so they may use this evidence as propensity evidence. Although the Government says Gumruku relied on Eratay to help address these allegations nearly 10 years after the event, it omits the substance of what he told them: Eratay worked to hire lawyers and there was nothing untoward about his activities to help Gumrukcu resolve the issues by proving he was a kidnap victim of the person accusing him in Turkey. Thus, the Government appears to be using Eratay's wholly appropriate conduct to backdoor evidence that Gumrukcu faced criminal charges in Turkey. But this is not a proper purpose. *See* Fed. R. Evid. 404.

Moreover, even the Government's characterization of this evidence is highly misleading. Gumrukcu did not leave Turkey because he was "absconding" from anything. The Government does not meet its burden of proving this fact (because they cannot). At most they present their, or Eratay's, interpretation of their belief without proper foundation. Nor do they provide proof (beyond their, or Eratay's belief) as to even when Gumrukcu left Turkey. Respectfully, the Government's presentation on this issue will mislead the Court (and ultimately the jury) with inflammatory mere allegations to argue that Gumrukcu is a "criminal" even in his own country. Allowing this evidence at trial will result in an inordinate waste of time on a collateral issue which will cause unfair prejudice to Gumrukcu.

The same is true of the Government's request to introduce evidence that Gumrukcu asked Eratay to assist him with obtaining lawfully a Cyprian passport, or that Eratay helped Gumrukcu address military service obligations in Turkey. *See* Dkt. 186 at 13. These events do not reflect

criminal activities, and instead, provide the Government another backdoor way to introduce irrelevant evidence of Gumrukcu's challenges in his home country.

So too, and importantly so, Gumrukcu does not dispute he had a close relationship with Eratay, and that he paid Eratay to assist him regularly throughout the years. Because the Government's proffered evidence is not "relevant to a material issue *in dispute*[,]" there is not basis for its admission. *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (To determine the admissibility of other act evidence, the Court considers "whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant."); *accord Curley*, 639 F.3d at 56-57 ).

Last, Gumrukcu disputes the Government's contentions regarding the Turkish case, the reason he left Turkey, when he left Turkey, and introduction of this evidence would waste time in a mini-trial over these allegations while serving to unfairly prejudice Gumrukcu and confuse the issues. The Court should thus preclude admission of evidence regarding any alleged case in Turkey.

> 2. **The allegation that Gumrukcu never obtained a medical degree, and instead purchased fraudulent medical credentials between 2019 and 2022 is irrelevant to the charges, and the Court should exclude it under Rule 404(b) and 403 in any event.**

The Government next suggests it will seek to present Eratay's testimony that "between late 2019 and 2022", Eratay stated he learned that Gumrukcu had not completed medical school, and then helped Gumrukcu obtain fake medical degrees from Russia. Dkt. 186 at 10; *see also id.*, at 13. But this evidence is not relevant to any of the charges and does not make it more likely that Gumrukcu committed financial fraud or murder against Davis. These events post-date the

criminal allegations by years, and don't supply any motive for the crimes alleged. Davis was long dead by the time Eratay claims that Gumrukcu allegedly confessed misconduct to him before enlisting his help to obtain evidence of medical bona fides. Indeed, by the Government's own admission, this had nothing to do with the murder of Davis or fraud against him. Their brief states, "In 2019, market researchers began poking around the defendant's background, and in November 2019, an internet investment publication claimed that the defendant's representations about his Turkish degree were false. This allegation posed problems for the defendant's ongoing scientific business opportunities including with Enochian." Dkt. 186 at 13. In other words, this evidence is neither contemporaneous with nor related to charged crimes, as required. *See Levy*, 731 F.2d at 1003-04; *Carboni*, 204 F.3d at 44; *Gonzalez*, 110 F.3d at 941-42.

For this reason, the proffered evidence of a Gumrukcu's status as a doctor should be excluded pursuant to Rule 404(b).

So too, the Government does not and cannot establish the evidence of the alleged diploma fraud in 2021 is "inextricably intertwined" with the allegations in this case, much less "necessary" to complete the story. *See Carboni*, 204 F.3d at 44. Nothing about this proffered evidence supports the factual inference that Gumrukcu committed murder *or* financial fraud against Gregg Davis. Rather, this alleged evidence constitutes character evidence, and is forbidden under Rule 404. And yet again, there is a factual dispute.

Last, introduction of this evidence would waste time, and this evidence would only serve to unfairly prejudice Gumrukcu and confuse the issues. The Court should thus preclude admission of evidence regarding Gumrukcu's education.

3. **Eratay's recruitment of Ethridge as a bodyguard in May 2105 is irrelevant character evidence that should be excluded pursuant to Fed. R. Evid. 401, 404, and 403.**

The Government further proffers Rule 404(b) evidence that Gumrukcu conducted a scam in Las Vegas in May 2015, and asked Eratay, *inter alia*, to find a "person to pose as the [phony] royal's bodyguard[,]" and Eratay then hired Aron Ethridge. Dkt. 186 at 11. While the Government claims this evidence "corroborates the precise kind of conduct charged in Count Four[,]" *id.*, it never explains why this is so. It isn't. Count Four addresses a years-long email campaign regarding payments allegedly owed under a contract. The events alleged in Vegas involve a one-off meeting, the details of which are not presented.

The prosecution's second basis for admitting this evidence is that it "corroborates the connection between the defendant and Ethridge." *See id.* But there are four problems with that justification. For one, this evidence is neither contemporaneous with nor related to charged crimes, as required. *See Levy*, 731 F.2d at 1003-04; *Carboni*, 204 F.3d at 44; *Gonzalez*, 110 F.3d at 941-42.

Moreover, Ethridge denies ever talking to Gumrukcu about the homicide he organized for Eratay, *viz.*, this evidence relates to Eratay's close relationship with the man he hired to organize Davis's murder. But no one contests that close relationship and that hiring. To be clear, Ethridge told the authorities that he communicated with and only with Eratay to make the plan to kill Davis for money, and for which Ethridge hired Banks. Even further, under the Government's telling, it was Eratay and not Gumrukcu who selected Ethridge for the bodyguard job, making the so-called "connection" even more attenuated. Last and dispositively, Gumrukcu does not dispute that he met Ethridge prior to January 2018, and thus there is no factual dispute on that issue.

4. **Eratay's alleged purchase of cocaine from Ethridge and for Gumrukcu is irrelevant character evidence that should be excluded pursuant to Fed. R. Evid. 401, 404, and 403.**

The Government seeks to introduce Eratay's testimony that Gumrukcu asked him to help him acquire cocaine when he was visiting Las Vegas, and that Eratay obtained the cocaine from his friend and neighbor, Ethridge. These allegations are wholly irrelevant to the charges, and only serve as character evidence proscribed by Rule 404. These allegations are neither contemporaneous with nor related to charged crimes. *See Levy*, 731 F.2d at 1003-04; *Carboni*, 204 F.3d at 44; *Gonzalez*, 110 F.3d at 941-42. Against the lack of any probative value to this evidence is eclipsed by the unfair prejudice that these claims threaten. The Court should thus exclude this evidence.

5. **The allegations of the 2014 loan to Devon Archer is irrelevant character evidence that should be excluded pursuant to Fed. R. Evid. 401, 404, and 403.**

The Government next proffers Eratay's testimony with respect to a $1.2 million loan Gumrukcu obtained from Devon Archer in 2014. Dkt. 186 at 11-12. Yet again, this evidence is neither contemporaneous with nor related to charged crimes. *See Levy*, 731 F.2d at 1003-04; *Carboni*, 204 F.3d at 44; *Gonzalez*, 110 F.3d at 941-42.

The Government alleges that Gumrukcu borrowed the money and used the loan proceeds to purchase a home in Los Angeles. *See id*. Then, rather than repay the loan within 30 days, the Government alleges that Gumrukcu delayed repayment of the loan.

This evidence of a delayed loan repayment in 2014—years before the allegations in this case—is irrelevant, constitutes proscribed character evidence, and should be excluded under Rule 403 in any event. Gumrukcu is not accused of having defrauded Archer. Rather, the Government claims that Gumrukcu used deceit to delay repayment to Archer. But loan repayment and wire fraud, as alleged Count Four, are not the same, and nothing about the Archer

evidence—other than the forbidden propensity inference—makes it more likely that Gumrukcu joined Eratay's scheme to murder Davis, or tried to defraud Davis out of any money or property. *See Curley*, 639 F.3d at 57 ("'Other act' evidence serves a proper purpose so long as it is not offered to show the defendant's propensity to commit the offense."); *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (*en banc*) ("[T]he Rule allows the use of other-act evidence *only when its admission is supported by some propensity-free chain of reasoning*.") (emphasis added).

The Court should reject the Government's appeal to the admission of propensity evidence, and should exclude the delayed loan repayment evidence pursuant to Rule 401, 404, and 403.

### 6. The Court should exclude Eratay's testimony that Gumrukcu recruited him to pose as a nurse.

The Government asks the Court to permit Eratay to testify that Gumrukcu asked him "to pose as a nurse in connection" with the treatment of a cancer payment in 2016. Dkt. 186 at 12. Again, the Government claims, *ipse dixit*, that this event corroborates Count Four, but without providing any support. *See id.* But that does not follow.

Nothing about this alleged event relates to the indictment's allegations. Rather, the Government seeks to offer propensity evidence that Gumrukcu practiced deceit. But settled law precludes the introduction of propensity evidence, *see Curley*, 639 F.3d at 57. This evidence does not supply any motive for the alleged crimes either. And again, this is a fact in dispute. The Court should thus exclude it as irrelevant under Rule 401, forbidden character evidence under Rule 404, and unfairly prejudicial testimony that would also waste valuable jury time and confuse the issues.

7. **The Court should deny the Government's motion to admit evidence that Gumrukcu used Eratay "to increase his social media prominence."**

In its next opaque presentation, the Government seeks admission of evidence that "defendant had Eratay use his tech skills and knowledge to increase his social media prominence, for example, by purchasing followers for the defendant's Instagram account." Dkt. 186 at 12. Although not specified, it appears that the proffered testimony concerns events that post-date the allegations in the indictment. Thus, like the Government's other proffered evidence, this evidence is neither contemporaneous with nor related to charged crimes. *See Levy*, 731 F.2d at 1003-04; *Carboni*, 204 F.3d at 44; *Gonzalez*, 110 F.3d at 941-42.

Again, nothing about this alleged conduct relates to the indictment's allegations. Rather, the Government again seeks to offer propensity evidence that Gumrukcu practiced deceit. But settled law precludes the introduction of propensity evidence, *see Curley*, 639 F.3d at 57. Nor does this evidence supply any motive for the alleged crimes. The Court should thus exclude it as irrelevant under Rule 401, forbidden character evidence under Rule 404, and unfairly prejudicial testimony that would also waste valuable jury time and confuse the issues.

8. **The California criminal case should be excluded pursuant to Fed. R. Evid. 401, 404, and 403.**

The Government's final offer of propensity evidence concerns a 2017 criminal case filed in the Los Angeles Superior Court. Dkt. 186 at 14-20. As the Government notes, in February 2017, the California authorities charged Gumrukcu with a variety of charges related to a real estate transaction with a nan named Ersin Akyuz, and with a check Gumrukcu issued to Gac on an account with insufficient funds. Only one count was resolved—Count 7—pursuant to Gumrukcu's plea of no contest to one count of grand theft in violation of California Penal Code section 459; the parties' plea agreement included a sentence of probation. The trial court then

dismissed all the remaining allegations. Two years following his no contest plea, the trial court granted his motion to reduce the judgment to a misdemeanor. *See* Dkt. 186 at 6, n.1. The Superior Court then set the misdemeanor conviction aside and dismissed the case in full.

The Government offers two bases to admit this evidence: motive and modus operandi, *viz.*, that the evidence reflects a "signature crime." *Id*. at 14 quoting *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990).[9] Neither withstands scrutiny.

As to motive, the Government first asserts that the evidence is relevant to show "the seriousness of the California case. *Id*. at 16. Why that is meaningful, even if true, is a mystery. Even putting aside that the case was resolved for a sentence of probation, and was then reduced to a misdemeanor, and then dismissed, nothing about the California case provided Gumrukcu a motive to murder Davis. Davis didn't know about any of these events, and his murder is unrelated to them.

Nor does the Government even attempt to sustain its claims that the California criminal case and the charges in Count Four are so "idiosyncratic" as to reflect identity. *See Mills*, 895 F.2d at 907 ("other act" evidence qualifies for admission, subject ot Rule 403, as *modus operandi* evidence, *viz.*, evidence that "the crimes are so nearly identical in method as to ear-mark them as the handiwork of the accused.") (internal citation and quotation omitted); *see also United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984) (same).

*Mills* "indicat[ed] that district court permissibly could have allowed proof that process used to make counterfeit bills "was a unique one, that ... had been encountered only once before in the experience of the Secret Service, and that on that prior occasion the perpetrator was [the

---

[9] For this reason, the Government's reliance on *Dupree*, *see* Dkt. 186 at 8, is misplaced. *Dupree* assessed "other act" evidence that reflected the defendant's knowledge and intent. 870 F.3d at 76. The Government opted not to try to sustain those Rule 404(b) predicates.

defendant][.]" *United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999).  *Sliker* "allow[ed] proof of similar fraud where both schemes depended upon the use of phony bank checks issued by the same non-existent offshore bank as well as on prearrangement with an 'officer' of the bank to confirm the validity of the checks[.]" *Id*.  And in *United States v. Danzey*, 954 F.2d 905 (2d. Cir. 1979), the Court affirmed the admission of "proof of prior robberies where appellant *conceded* he had a trademark method of robbing a bank and methodologies were very similar[.]" *Tubol*, 191 F.3d at 95.  The Government presents no evidence of such "unique" conduct it amounts to a signature crime, and Gumrukcu has made no concessions supporting admission.

As to Akyuz, Gumrukcu allegedly obtained his monies for an investment and misused them; in contrast, Count Four doesn't identify *any* money or property sought by Gumrukcu, and the transactions with Davis and Gac had one critical consistency: the money flowed one way, *from* Gumrukcu *to* Davis and Gac.  In other words, these events are opposites.  The Government's presentation boils down to the same problem demonstrated by Count Four: a contention that "deceit" is sufficient for a fraud allegation, and that deceit to persons other than Davis and Gac is "relevant" to believe that Gumrukcu practiced deception on them too.  But that is propensity evidence.

The Government's next tries to bolster this irrelevant evidence by injecting Eratay's post-cooperation allegation that Gumrukcu solicited him to find a hitman in Turkey, and now Eratay deduces that Gumrukcu wanted to have Akyuz murdered.  In Eratay's account, he declined such assistance.  But this newly minted claim does not make the California prosecution relevant, and certainly does not present evidence of a unique, signature crime.  A basic claim of solicitation is not "unique" or "idiosyncratic."  Indeed, there a criminal statute the covers the exact conduct directly.  *See* 18 U.S.C. § 373.  And it certainly qualifies as an inflammatory allegation designed

to unfairly prejudice Gumrukcu. This is a wholly uncorroborated and inflammatory account, that by the Government's own admission was based on an "assumption" by Eratay that the victim was Akyuz. "Gumrukcu told Eratay that he wanted to kill someone in Turkey, whom Eratay understood to be Akyuz." June 26, 2024 Letter to Counsel, Dkt. 185, Ex. 1. It should be excluded pursuant to Rule 403 in any event.

Last, the Government confesses its intention to use this evidence as propensity evidence. *See* Dkt. 186 at 16. As the prosecution makes plain, it wants to argue that because Gumrukcu practiced deceit against Akyuz *without* Eratay's help that supports the conclusion that Eratay's deceitful communications with Davis in the name of Murat Gumrukcu were actually directed by Serhat Gumrukcu, as Eratay now claims as part of his cooperation plea. But given the significant differences in the two matters, with Eratay lacking any involvement in the Akyuz transaction, show the fundamental flaw in the Government's comparison of the two matters.

As for the charges related to bouncing checks to Gac, Gumrukcu agrees that this evidence relates to the charges in Count Four, should it survive the pending motion to dismiss. But admitting evidence of the conduct—the bouncing of the checks—does not require admitting evidence of the state court charges that followed thereafter but were never adjudicated. The Court can easily draw this line that excludes the character evidence the prior charges would present, and simply permit the prosecution to admit evidence of the underlying facts regarding Gumrukcu's and Gac's interactions.[10]

---

[10] The Government closes its brief with an exegesis on Rule 404(b) evidence going to "knowledge and intent." Dkt. 186 at 20, n.2. But the Government's MIL presents as its *only* Rule 404(b) bases for admission claims of motive and modus operandi evidence. As a result, the Government's arguments should be limited to its presentation.

## CONCLUSION

For the foregoing reasons, the Court should deny the Government's motion to admit Rule 404(b) evidence. At a minimum, it should exclude any introduction or mention of other act evidence until the defense has rested its case. *See United States v. Halper,* 590 F.2d 422, 432 (2d Cir. 1978).

Dated this 26th Day of July 2024.

        Respectfully submitted,

        */s/ Susan K. Marcus*
        SUSAN K. MARCUS
        Law Firm of Susan K Marcus LLC
        29 Broadway, Suite 1412
        New York, NY 10006
        (212) 792-5131
        susan@skmarcuslaw.com

        */s/ Ethan A. Balogh*
        ETHAN A. BALOGH
        Balogh & Co., APC
        100 Pine Street, Suite 1250
        San Francisco, CA 94111
        (415) 391-0441
        eab@balcolaw.com

        */s/ Lisa B. Shelkrot*
        Lisa B. Shelkrot
        Langrock Sperry & Wool
        210 College Street, Suite 400
        Burlington, VT 05402-0721
        (802) 864-0217
        lshelkrot@langrock.com

        Attorneys for Defendant
        SERHAT GUMRUKCU