U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 MAR 14  AM 8:09

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>SERHAT GUMRUKCU. | ) Case No. 5:22-cr-58 —1<br>)<br>)<br>)<br>) **ORAL ARGUMENT REQUESTED**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# NON-PARTY BENJAMIN KACEV'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA

## I.   INTRODUCTION

The government seeks to drag non-party Benjamin Kacev 3,000 miles to provide irrelevant and inadmissible testimony that has nothing to do with any of the charges against defendant Serhat Gumrukcu. Over ten years ago, Mr. Kacev met Mr. Gumrukcu in Los Angeles, California. The two had one meeting. Mr. Kacev, an attorney, was approached by Mr. Gumrukcu to possibly provide legal services. Mr. Kacev never provided legal services to Mr. Gumrukcu, and to the best of Mr. Kacev's recollection, the two never spoke again.

Mr. Kacev later learned that someone purporting to be him sent emails from an email address, benkacev@gmail.com (the "Email Account"). Mr. Kacev *does not know who sent the emails or who pretended to be him*. Subsequently, Ersin Akyuz sued Mr. Gumrukcu in California, claiming Mr. Gumrukcu had defrauded him out of a large sum of money. Mr. Akyuz also asserted it was Mr. Gumrukcu who had operated the Email Account. In connection with that dispute, Mr. Kacev submitted a declaration confirming he had not emailed Mr. Akyuz from the Email Account. Mr. Gumrukcu was never convicted of a crime in connection with allegedly defrauding Mr. Akyuz. Mr. Kacev has no knowledge of the outcome of the civil dispute. This

1

dispute has nothing to do with a separate, purported fraud involving Gregory Davis, a decade later.

The government served a subpoena on Mr. Kacev, seeking his testimony about the Email Account (the "Subpoena"). But the Email Account—used *ten years ago*—has no relevance to this case, which involves a murder-for-hire scheme. Instead, the sole purpose of Mr. Kacev's testimony is to bring into evidence Mr. Gumrukcu's purported past misconduct from ten years ago. Indeed, the government represented to counsel for Mr. Kacev that this evidence was relevant to show "absence of mistake" or "modus operandi,"[1] neither of which appear relevant based on the indictment.

The government intends to introduce Mr. Kacev's testimony, which is at best inadmissible propensity evidence under Rule 404(b) of the Federal Rules of Evidence. The Subpoena should thus be quashed. *U.S. v. Avenatti*, No. S1 19 Cr. 373 (PGG), 2020 WL 508682, at *3 (S.D.N.Y. Jan. 31, 2020).

The Subpoena also should be quashed because it requires Mr. Kacev to fly from Los Angeles, California to Vermont for the sole purpose of testifying that he did not send certain unrelated emails ten years ago, in a trial of a man accused of having a witness murdered. That is

---

[1] Modus operandi evidence is admissible under Rule 404(b)(2) is "to prove the identity of the defendant as the person who committed the offense being prosecuted," which is established by demonstrating that the crime fits within a unique pattern of conduct attributable to the defendant. *United States v. Campbell*, 300 F.3d 202, 215 (2d Cir. 2002). As explained by the Second Circuit, "the more unique and unusual are the common characteristics of the similar acts involved, the more probative become the prior acts, since they then are sufficiently distinctive to be viewed as "fingerprints" or "signatures" of the person charged." *United States v. Neary*, 733 F.2d 210, 216 (2d Cir. 1984) (cleaned up); *U.S. v. Pascarella*, 84 F.3d 61, 72 (2d Cir. 1996) ("Similarity of the acts is required . . . when the evidence is used to prove . . . a common scheme or plan."); *U.S. v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990); *see also U.S. v. Martoma*, 2014 WL 31213, at *4 (S.D.N.Y. Jan. 6, 2014) ("When evidence of uncharged acts is used to establish . . . common scheme or plan, or modus operandi, the proponent must demonstrate the similarity of the charged and uncharged acts."); *U.S. v. Radoncic*, 986 F. Supp. 845, 847 (D.Vt. 1997) ("The evidence . . . is offered to prove plan or common design. The similarity between the . . . charges make that purpose particularly relevant.").

unduly burdensome and absolutely unnecessary. This is yet another reason the Subpoena should be quashed. *See U.S. v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991).

## II. MR. KACEV'S PURPORTED KNOWLEDGE

### A. Mr. Kacev Met Mr. Gumrukcu Once, Seven Years Ago.

Over ten years ago, Mr. Kacev met Mr. Gumrukcu. Declaration of Benjamin Kacev ("Kacev Decl.") ¶ 2. Mr. Kacev is an attorney. *Id.* ¶ 1. Mr. Kacev has virtually no recollection of that meeting but vaguely recalls that Mr. Gumrukcu was considering retaining Mr. Kacev for legal services. *Id.* ¶ 2. Mr. Gumrukcu ultimately did not retain Mr. Kacev or his firm. *Id.* Mr. Kacev never provided Mr. Gumrukcu with any legal services. *Id.* After that meeting, Mr. Kacev does not believe he spoke with Mr. Gumrukcu or anyone connected with him again. *Id.*

### B. Mr. Kacev's Identity Is Stolen.

Sometime later, Mr. Kacev learned that someone had been sending emails, purporting to be him, from the Email Account. *Id.* ¶ 3. Specifically, the authorities told Mr. Kacev about the existence of the Email Account. *Id.* Mr. Kacev did not create the Email Account, does not (and has never) had access to the Email Account, and he has never used the Email Account for any purpose. *Id.* **Mr. Kacev does not know who created the Email Account, who used it, and who caused any emails to be sent from the Email Account.** *Id.* ¶ 7. Put simply, Mr. Kacev has no ability to connect those emails, or any criminal activity, to Mr. Gumrukcu.

Mr. Kacev was told by counsel for Ersin Akyuz that the Email Account was used to email Mr. Akyuz in 2014. *Id.* ¶ 5. Mr. Kacev has never spoken to Mr. Akyuz, and he has never met Mr. Akyuz. *Id.* A lawyer representing Mr. Akyuz approached Mr. Kacev to submit a declaration regarding the Email Account in a civil dispute between Mr. Akyuz and Mr. Gumrukcu (the "Declaration"). *Id.* In the Declaration, Mr. Kacev confirmed that he did not create the Email Account, send emails from the Email Account, or play any role in negotiating a deal between Mr. Akyuz and a third party. *Id.* ¶ 6. Similarly, Mr. Kacev never drafted any documents related to any business conducted by Ermes LLC. *Id.* ¶ 8. Mr. Kacev has no

3

information regarding who sent the emails, who created the email account, who used the email account, or with whom Mr. Akyuz negotiated.

Mr. Kacev also has no knowledge about any of the charged conduct in this case including: (1) the alleged murder-for-hire scheme at issue here; (2) the purported victim, Gregory Davis; and (3) the underlying transaction between Messrs. Gumrukcu and Davis. *Id.* ¶ 9.

### C. The Subpoena Is Served on Mr. Kacev.

The government served Mr. Kacev with a subpoena to testify in this matter. *See* Declaration of Kevin D. Lloyd ("Lloyd Decl."), Ex. 1. Counsel for Mr. Kacev discussed, at length, with the Assistant United States Attorney Zachary Stendig that Mr. Kacev did not have any knowledge relevant to this dispute. *Id.* ¶ 4. Mr. Kacev's counsel asked Mr. Stendig to withdraw the subpoena, or in the alternative, if he and counsel for Mr. Gumrukcu could reach a stipulation, such that Mr. Kacev's testimony was unnecessary. *Id.* ¶ 6. Mr. Stendig sent a proposed stipulation to Mr. Gumrukcu's counsel, which sought the following factual stipulations, none of which tie Mr. Gumrukcu to a prior crime or even any prior conduct:

1. Benjamin Kacev has been an attorney in the State of California since 2005.
2. Mr. Kacev once met Serhat Gumrukcu, but never provided him with any legal services.
3. Mr. Kacev did not create, did not have any access to, nor ever used, the e-mail address benkacev@gmail.com.
4. Mr. Kacev never sent any e-mails to Ersin Akyuz, including any emails from benkacev@gmail.com.
5. Mr. Kacev has reviewed emails purportedly sent by benkacev@gmail.com and confirmed that he did not draft the e-mails or cause them to be sent.[2]

---

[2] Mr. Kacev has no recollection of the contents of any emails he may have previously reviewed. Moreover, he cannot testify that Mr. Gumrukcu sent these emails, that Mr. Akyuz received these emails, or the genuineness of the contents of the emails.

4

6. Mr. Kacev never drafted any documents related to any business conducted by Ermes LLC.

*Id.*, Ex. 2 (the "Proposed Stipulation"). The parties were unable to so stipulate. *Id.* ¶ 11.

### D. Mr. Akyuz Is Not Testifying Rendering Mr. Kacev's Testimony Irrelevant.

Counsel has learned from the government that Mr. Akyuz was not included on the government's witness list for trial. *Id.* ¶ 12. Mr. Akyuz is the only person that can tie the emails to Mr. Gumrukcu. Without Mr. Akyuz's testimony, Mr. Kacev's testimony is entirely irrelevant, and possesses no probative value whatsoever.[3] Mr. Kacev cannot tie Mr. Gumrukcu to any criminal conduct. Mr. Kacev cannot establish that Mr. Gumrukcu sent any of the emails. Mr. Kacev cannot establish that Mr. Gumrukcu made any misrepresentations, or for that matter any representations at all to Mr. Akyuz. And again, it bears repeating: this is a separate fraud from the alleged fraud involving Mr. Davis.

If the government contends Mr. Gumrukcu previously engaged in an unrelated fraud, and the Court finds that testimony regarding purported prior criminal activity that did not result in a conviction is admissible evidence in this case, the government should call the only witness that can testify regarding purported misconduct by Mr. Gumrukcu—Mr. Akyuz.

### III.   THE SUBPOENA SHOULD BE QUASHED.

The Subpoena should be quashed because it violates Rule 17. Rule 17 "is trial-focused and . . . may be used only to obtain materials admissible as evidence at trial." *U.S. v. Louis*, No. 04-CR-203 (LTS), 2005 WL 180885, at *1 (S.D.N.Y. Jan. 27, 2005). Such subpoenas are not "intended to provide a means of discovery for criminal cases." *See U.S. v. Nixon*, 418 U.S. 683, 698 (1974); *U.S. v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (finding that Rule 17 subpoenas cannot be used to "undercut[ ] the strict limitation of discovery" found in Rule 16).

A Rule 17(c) trial subpoena must meet the tests of "(1) relevancy; (2) admissibility; and (3) specificity." *U.S. v. Avenatti*, No. S1 19 Cr. 373 (PGG), 2020 WL 508682, at *3 (S.D.N.Y.

---

[3]   Mr. Kacev's testimony would not have little to no relevance to this proceeding even if Mr. Akyuz were testifying.

5

Jan. 31, 2020); *see also U.S. v. Percoco*, No. 16 Cr. 776 (VEC), 2018 WL 9539131, at *2 (S.D.N.Y. June 14, 2018) (collecting cases applying the same standards to pre-trial and trial subpoenas). Courts must also quash or modify subpoenas when compliance, as here, would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).[4]

Here, the Subpoena does not seek relevant or admissible evidence, and it is, by its terms, unreasonable. Accordingly, this Court should quash the Subpoena. *See U.S. v. Coriaty*, 2000 WL 1099920, at *6 n.4 (S.D.N.Y. 2000) (citation omitted) ("[I]t is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose").

### A. The Subpoena Seeks Irrelevant and Inadmissible Testimony.

Evidence is relevant if it has "any tendency to make the existence of any fact . . . more probable or less probable." Fed. R. Evid. 401. Here, Mr. Kacev does not have any knowledge related to: (1) the murder-for-hire scheme to allegedly kill a potential witness; (2) Gregory Davis; or (3) the underlying transaction between Messrs. Davis and Gumrukcu. Kacev Decl. ¶ 9. Based on the Proposed Stipulation, Mr. Kacev anticipates his testimony would discuss the Email Account, of which he has no knowledge other than that he did not create the account. Such testimony constitutes irrelevant and inadmissible character evidence.

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act" is not admissible to show a defendant's character but "may be admissible for another purpose, such as proving motive,

---

[4] Although the *Nixon* standard directly applies only to subpoenas for documents, courts routinely quash subpoenas for personal appearances where the witness has a valid claim of privilege or it is clear that the subpoena was not issued in good faith. *See U.S. v. Klubock*, 832 F.2d 649, 656 (1st Cir. 1987) (holding that, although Rule 17(c) does not address subpoenas for testimony, "silence in the Federal rules of procedure does not necessarily mean that the courts are powerless to correct perceived problems as they arise, either by decision, or by local rule, where appropriate"); *U.S. v. Abuhouran*, 972 F. Supp. 326, 328 (E.D. Pa. 1997) (quashing subpoena to four FBI agents for testimony at sentencing hearing because the evidence was unnecessary and defendant could testify to the desired information himself); *U.S. v. Kahn*, No. 06-cr-255 (DLI), 2009 WL 152582 (E.D. N.Y. Jan. 20, 2009) (quashing subpoena for trial testimony of federal agents because it was "questionable whether this evidence, if produced, would demonstrate the proffered reason for its relevance . . .").

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). To admit evidence under Rule 404(b), a court must find that the evidence is "(1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial." *U.S. v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002) (citing *Huddleston v. U.S.*, 485 U.S. 681 (1988)). Although the Second Circuit employs an inclusionary approach to this rule, the rule does not "authorize the admission of any and every sort of other-act evidence simply because a defendant proffers an innocent explanation for the charged conduct." *U.S. v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993). Nor should evidence be admitted if its sole purpose is to show the "defendant's bad character" or propensity towards criminal activity. *See U.S. v. Pascarella*, 84 F.3d 61, 62 (2d Cir. 1996).

The Second Circuit also requires some meaningful similarity between the prior and current acts. *See U.S. v. Garcia,* 291 F.3d 127, 137-38 (2d Cir. 2002) ("The government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime. The government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act.").

The government cannot meet its burden of establishing that Mr. Kacev's testimony is substantially more probative than prejudicial, as the evidence would lead to a "trial within a trial before the jury." *See U.S. v. AlKassar*, 582 F. Supp. 2d 498, 500 (S.D.N.Y. 2008). The confusion and distraction caused by the introduction of such evidence interferes with a defendant's right to a fair trial. *See U.S. v. Johnson*, 816 F. App'x 604, 610 (2d Cir. 2020) ("[T]he district court . . . determined that the minimal probative value was substantially outweighed by a 'real risk of distraction' and concerns regarding a potential 'trial within a trial.'"); *U.S. v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (upholding the district court's decision to exclude evidence that "would require the jury to consider . . . a 'trial within a trial'"). Here, as Mr. Kacev's testimony serves no proper purpose, is not relevant, and will result in a "trial within a trial," the Subpoena should be quashed. *Downing*, 297 F.3d at 58.

### 1. Mr. Kacev's Testimony Serves no Proper Purpose.

There is no similarity, or any connection whatsoever, between Mr. Gumrukcu allegedly hiring someone to kill a witness, on the one hand, and meeting with Mr. Kacev once ten years ago (or the fact that Mr. Kacev's identity was stolen, possibly by Mr. Gumrukcu). As previously noted, Mr. Kacev cannot testify that Mr. Gumrukcu stole his identity, he only can testify that he did not send the purported emails. For Mr. Kacev's testimony to have any conceivable relevance to the charges at issue, and Mr. Kacev does not concede it does, the government would then have to establish that Mr. Gumrukcu committed identity theft and fraud, which would require the government to establish that: 1) Mr. Gumrukcu sent the emails purporting to be Mr. Kacev; 2) the emails were sent as part of a scheme or plan to defraud for purposes of obtaining money or property by means of fraudulent purposes; 3) that Mr. Gumrukcu acted with the intent to defraud, and 4) that those emails were in fact sent by means of a wire. *See* 18 U.S.C. § 1028A(a)(1); *U.S. v. Dumitru*, 991 F.3d 426, 431 (2nd Cir. 2021).

Proving these elements to establish that Mr. Gumrukcu committed an unrelated fraud over a decade ago would require a trial within a trial in this already lengthy proceeding before the Court determines whether the prior misconduct is in fact admissible. Mr. Kacev cannot establish any element of the alleged prior misconduct, and the government has now indicted to the Court and to counsel for Mr. Kacev that it intends to conduct the trial within a trial without the only witness that possibly can establish any of the element of the prior alleged crime – Mr. Akyuz.[5]

Moreover, even if the government somehow establishes that Mr. Gumrukcu stole Mr. Kacev's identity more than a decade ago, that does not make it more likely that Mr. Gumrukcu hired someone to kill a witness against a decade later, 3,000 miles away. Any "similarity" can be boiled down to the government wanting to show that Mr. Gumrukcu is a habitual criminal,

---

[5] Moreover, if the government is correct that Mr. Akyuz's testimony is unnecessary because the testimony of federal agents and the prosecutor is adequate and admissible, then surely their testimony also is admissible to establish that Mr. Kacev did not send the emails.

which is an impermissible propensity argument.

### 2. Mr. Kacev's Testimony is Not Relevant.

The alleged identity theft also is irrelevant to the question of knowledge, intent, or plan. The proposed testimony sheds no proper light on the charges in this case. It relates to specific instances of alleged prior conduct, that substantially pre-date the formation of any alleged enterprise and do not involve any alleged co-conspirators here. The proposed testimony does not relate to Mr. Gumrukcu hiring someone to kill a witness, as charged in the Indictment, nor does it demonstrate a grand plan to silence a witness. These incidents shed no light on the nature and existence of any enterprise to kill a witness. Quite the contrary, the evidence would appear to suggest that previously Mr. Gumrukcu made no effort to silence Mr. Akyuz.

### 3. The Prejudice of Mr. Kacev's Testimony Outweighs Any Proper Purpose or Relevance.

Even if the Court were to find that Mr. Kacev's testimony was relevant to some proper purpose (it should not), it should still be excluded because its marginal relevance is substantially outweighed by the confusion, delay, and prejudice it would cause. Fed. R. Evid. 403. The prejudice would be overwhelming and could not be remedied with a curative jury instruction.

The government is attempting to cast Mr. Gumrukcu as a serial bad actor based on conduct from a decade earlier for which he was not convicted of a crime. Thus, the government is attempting to prejudice the jury against Mr. Gumrukcu with "evidence" from Mr. Kacev that does not establish any criminal conduct or even that Mr. Gumrukcu engaged in any conduct beyond meeting once with Mr. Kacev.

As discussed infra, Mr. Kacev cannot link the Email Account to Mr. Gumrukcu. Mr. Kacev has no knowledge related to who created the Email Account, or who used it to send emails. Kacev Decl. ¶ 7. Mr. Kacev can only testify that he did not send the emails, assuming they were sent. Thus, the Subpoena would essentially require Mr. Kacev to fly from California to Vermont just to confirm he did not send certain emails and that he has no idea who did send those emails.

9

Presumably, the government intends to link Mr. Gumrukcu to the Email Account by asking Mr. Kacev about the single meeting he had with Mr. Gumrukcu, *over ten years ago*. *Id.* ¶ 2. But Mr. Kacev cannot make that connection, and any attempt to draw that inference would be purely speculative. At the time the prior events occurred, Mr. Kacev was an attorney at a large national law firm. His picture and email address were publicly available on the firm's website. A person would not need to meet Mr. Kacev to learn he was a lawyer. The government can only establish the alleged fraud from Mr. Akyuz, who is not testifying. Thus, the government intends to hold a "trial within a trial," requiring Mr. Gumrukcu to defend himself inuendo regarding purported conduct that occurred over ten years ago that is not at issue. There is no reason a Vermont jury, ten years later, should be forced to determine whether Mr. Gumrukcu stole Mr. Kacev's identity to determine whether he arranged an unrelated murder.

As Mr. Kacev's testimony has little if any probative value, and is highly prejudicial, the Court should not admit his testimony and should quash the subpoena.

### B.    Compliance With the Subpoena is Unreasonable and Oppressive.

"[C]ourts should quash or modify subpoenas when compliance would be 'unreasonable or oppressive.'" *U.S. v. Khan*, No. 06-CR-255-DLI, 2009 WL 152582 at *1 (E.D.N.Y. Jan. 20, 2009). The government bears the burden of proving that the subpoena should be enforced. *U.S. v. Ferguson*, No. 3:06CR137 (CFD), 2008 WL 113663 at *1 (D. Conn. Jan. 2, 2008). It is also unreasonable given the facts here. Mr. Gumrukcu is accused of hiring a hit man to kill a potential *witness* against him. Mr. Kacev has no knowledge about this scheme, Gregory Davis, or the transaction between Mr. Davis and Mr. Gumrukcu. *Id.* ¶ 9.

The Subpoena requires Mr. Kacev to travel to Vermont from Los Angeles, California to provide the limited, irrelevant testimony described above. Kacev Decl. ¶ 10. There are no direct flights between California and Vermont. *Id.* It will take Mr. Kacev 10-12 hours *each way* to provide his testimony, which does not go towards proving any fact necessary for the government to obtain a conviction on any charge in this case. *Id.* The trip also would require Mr. Kacev to miss multiple physical therapy appointments while he is recovering from a serious leg injury. *Id.*

10

¶ 11. That is unreasonable. Under such circumstances, it is well-within this Court's discretion to quash the Subpoena on this basis. *See U.S. v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (recognizing that respondents may object to a subpoena not only based on relevance or specificity but also because "compliance would be overly burdensome").

### C.     Even if Sought for Impeachment Testimony, the Subpoena Should be Quashed.

Even generously construing the government's request for production as seeking impeachment evidence, it should still be quashed. Impeachment evidence "does not become relevant until the witness testifies." *U.S. v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *3 (S.D.N.Y. May 17, 2018). As a result, "the weight of the authority in this Circuit favors production when the witness testifies," even when "it is a virtual certainty that [the witness] will testify." *U.S. v. Seabrook*, No. 16 Cr. 467 (ALC), 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017); *see also U.S. v. Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) ("[S]everal cases articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes."). Thus, even if the Subpoena sought only impeachment material, it still would not meet the relevance or admissibility tests, and it should still be quashed.

### IV.    CONCLUSION

For the above reasons, the Subpoena directed to Mr. Kacev should be quashed in its entirety.

Dated in Burlington, Vermont this 14th day of March, 2025.

DOWNS RACHLIN MARTIN PLLC

By: /s/ Tristram J. Coffin

Tristram J. Coffin
Gina M. Puls
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375
tcoffin@drm.com
gpuls@drm.com

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

Kevin D. Lloyd (*pro hac vice forthcoming*)
865 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213-622-5555
klloyd@allenmatkins.com

*Attorneys for Non-Party Benjamin Kacev*

12